IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BAO MOUA,

    Plaintiff,

No. CIV S-08-1941 DAD

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

ORDER

    Defendant.
_____/

    This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded for further proceedings consistent with this opinion.

**PROCEDURAL BACKGROUND**

    In August 2003, plaintiff Bao Moua, also known as Bao Moua Lee, applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act). (Transcript (Tr.) at 42.) She alleged that she became disabled on January 7, 2000, due to pain, depression, headaches, and dizziness. (Id.) The application was denied by the agency initially and upon reconsideration, and Administrative Law Judge (ALJ) Plauche F. Villere, Jr. found

1

plaintiff not disabled on June 21, 2005.  (Tr. at 42-47.)  The ALJ determined that plaintiff had the medically determinable impairment of anemia but did not have any impairment that would significantly limit her ability to perform work-related activities.  (Tr. at 46.)  On August 16, 2005, the Appeals Council denied plaintiff's request for review of the ALJ's decision and plaintiff did not seek judicial review of that decision.  (Tr. at 8, 88.)

On September 30, 2005, plaintiff filed a new application for SSI, again alleging disability beginning January 7, 2000.  (Tr. at 74-81.)  At that time she alleged that she was unable to work because of pain, dizziness, blurred vision, and depression.  (Tr. at 51.)  The application was denied initially on March 9, 2006, and upon reconsideration on December 15, 2006.  (Tr. at 51-60.)  Upon plaintiff's request, a hearing was held before ALJ Mark C. Ramsey on December 11, 2007.  (Tr. at 17-36, 61.)  Plaintiff was represented by an attorney and testified at the hearing through an interpreter.  In a decision issued on February 26, 2008, the ALJ found plaintiff not disabled.  (Tr. at 8-11.)  First, ALJ Ramsey determined that the findings enumerated by ALJ Villere on June 21, 2005 had not changed.  (Tr. at 11.)  The 2005 findings were as follows.

> 1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2. The claimant has the following medically determinable impairment(s): anemia.
>
> 3. The claimant does not have any impairment or impairments that significantly limit her ability to perform basic work-related activities; therefore, the claimant does not have a "severe" impairment (20 CFR § 416.920).
>
> 4. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(c)).

(Tr. at 46.)  After determining that these findings were unchanged, ALJ Ramsey entered the following findings in his February 26, 2008 decision:

> 1. The claimant has not performed any substantial gainful activity since her alleged date of disability.

/////

2

> 2. The claimant does not have impairment, or impairments that significantly limit her ability to perform the basic work-related activities; therefore, the claimant does not have a severe impairment.
>
> 3. The claimant is not under a disability as defined by the Social Security Act and Regulations, at any time through the date of this decision.

(Tr. at 11.)

On June 21, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. at 1-4.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 20, 2008.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence

supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff argues in support of her motion for summary judgment that the ALJ erred when he did not find that she had a severe impairment at step two and, as a result of this finding,

4

failed to complete the sequential evaluation.  Plaintiff seeks an order reversing and remanding her case to the Commissioner for a new hearing.

At step two of the sequential evaluation process, the ALJ must determine if the claimant has any medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a) & 416.921(a).  Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, and carrying, (2) capacities for seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervisors, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) & 416.921(b).

The United States Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."  Yuckert, 482 U.S. at 153.  However, the regulation must not be used to prematurely disqualify a claimant.  Id. at 158 (O'Connor, J., concurring).

To prevent premature disqualification of claimants, the Ninth Circuit has held that "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Smolen, 80 F.3d at 1290, and adding emphasis).  "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process."  Social Security

Ruling (SSR) 85-28, 1985 WL 56856, at *3.  "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'"  Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290).  See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb. 11, 2008) (describing claimant's burden at step two as "low").

In the present case, the analysis of plaintiff's impairments at step two must take into consideration the fact that the application for disability benefits at issue arises under Title XVI of the Act, as did plaintiff's prior application for disability benefits in 2003.  Acquiescence Ruling 97-4[9] (Chavez) provides that

> with respect to an unadjudicated period, where the claim arises under the same title of the Social Security Act (the Act) as a prior claim on which there has been a final decision by an Administrative Law Judge (ALJ) or the Appeals Council that the claimant is not disabled, the Social Security Administration (SSA) must: (1) apply a presumption of continuing nondisability and, if the presumption is not rebutted by the claimant, determine that the claimant is not disabled; and (2) if the presumption is rebutted, adopt certain findings required under the applicable sequential evaluation process for determining disability, made in the final decision by the ALJ or the Appeals Council on the prior disability claim.

Soc. Sec. Acq. Ruling 97-4[9] (Chavez).  In order to rebut the presumption of continuing non-disability, the claimant must demonstrate "changed circumstances" since the prior application.  Id.

The Ninth Circuit has defined such "changed circumstances" to include both an increase in the severity of an impairment, Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995), and also an impairment not previously considered, Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988), Lester, 81 F.3d at 827.

Plaintiff argues that ALJ Ramsey erred in finding that plaintiff failed to rebut the presumption of continuing non-disability.  In this regard, plaintiff contends that the record reflects both an increase in the severity of her impairments and also impairments not previously

6

considered. Plaintiff asserts that ALJ Ramsey erred in concluding that the medical records submitted after June 21, 2005, the date of ALJ Villere's decision, "do not contain any new or material objective findings which would rebut the presumption of continuing non-disability" and serve to establish the existence of a changed circumstance. (Tr. at 9.) Plaintiff points to evidence demonstrating an increase in the severity of her mental impairment since her first application, together with new diagnoses of PTSD and cholelithiasis, neither of which was considered in ALJ Villere's 2005 decision.

The evidence before ALJ Villere on June 21, 2005, included the treating records of We-Care Medical Center for 2003. These records showed that plaintiff sought treatment for leg pain, knee pain, low back pain, headaches, and fatigue; plaintiff had normal laboratory studies except for mildly low glucose levels; she had some tenderness in her back and neck but there were no significant objective findings; a diagnosis of possible osteoarthritis was made, although no x-rays were taken, and she was treated with Tylenol and other pain medications; she was also treated for uncomplicated kidney stones. (Tr. at 44.) Progress notes from 2004 and 2005 showed continued complaints of pain with minimal findings and treatment for mild anemia. (Id.)

The evidence in 2005 included a 2003 report by consultative examiner J. Martin, M.D. Dr. Martin found plaintiff's musculoskeletal complaints possibly related to osteoarthritis, but also found plaintiff's cooperation poor based on what he viewed as "much grimacing and pain vocalization" that was not noted on casual observation. He observed that plaintiff was able to squat and arise from a squatting position without obvious difficulty. He found no functional limitations. (Id.)

The evidence in 2005 include a 2003 report by Joanna T. Koulianos, Ph.D., a psychiatric consultative examiner. Dr. Koulianos noted that plaintiff's claim of disability arose from trauma suffered when escaping from Laos into Thailand. Dr. Koulianos found plaintiff concerned with physical health difficulties and complaints of pain in her back and neck, but the

doctor did not endorse "a constellation of symptoms associated with post-traumatic stress disorder." Dr. Koulianos opined that plaintiff appeared to have borderline intellectual functioning but no significant difficulties communicating her thoughts in a logical and organized fashion, no difficulty reporting information from the past, and no bizarre mentation or internal preoccupation. Dr. Koulianos found no limitations in plaintiff's ability to do the mental requirements of work. (Id.)

Plaintiff was treated at Sacramento County Mental Health, and their records from November 2004 to March 2005 reflected the following: plaintiff reported symptoms of depression corresponding with the time of her mother's death; she had complaints of neck pain, back pain, and headaches; her GAF assessment of 60 was consistent with mild to moderate limitation in functioning; she was put on medication and by December 2004 her sleep was improved; her mood was also improved, and she improved overall.

The record in 2005 included a report by a fraud investigator who interviewed plaintiff in 2004. Plaintiff told him she was disabled due to leg pain when she walks, but he observed that she did not require the use of a cane, crutches, or wheelchair. She stood, without any assistance, during his 24-minute evaluation of her. (Tr. at 45.)

Plaintiff states that in 2005 her mental impairment included a diagnosis of a major depressive disorder - single episode with a GAF of 60. In the unadjudicated period that followed, plaintiff was diagnosed with PTSD and a GAF of 55. In March 2006, Dr. Koike, plaintiff's treating psychiatrist, noted that plaintiff appeared to suffer from previously undiagnosed PTSD, continued to be depressed with numerous somatic complaints, and was "very symptomatic." (Tr. at 302.) In 2007, Dr. Koike submitted an assessment reflecting his opinion that plaintiff had significant work related limitations. (Tr. at 272.) In Dr. Koike's opinion, plaintiff was unable to meet competitive standards in her ability (a) to maintain regular attendance and be punctual within customary, usually strict tolerances, (b) to sustain an ordinary routine without special supervision, (c) to complete a normal workday and work week without

8

interruptions from psychologically-based symptoms, (d) to perform at a consistent pace without an unreasonable number and length of rest periods, (e) to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (f) to respond appropriately to changes in a routine work setting, and (g) to deal with normal work stress. (Tr. at 272.) Dr. Koike concluded that plaintiff "can't handle the needs and responsibilities of a normal work environment." (Id.) This evidence demonstrates that plaintiff's depression had worsened and she had a new diagnosis of PTSD.

With respect to physical impairments, ALJ Villere had found in 2005 that plaintiff suffered only from anemia. In March 2007, plaintiff was seen in the emergency room at Mercy General Hospital. Abdominal sonography showed "[i]ntense echogenicity and shadowing" arising from the gallbladder area, "consistent with a gallbladder filled with calculi." (Tr. at 314.) The impression was cholelithiasis, i.e. gallstones. (Id.) In August 2007, Dr. Li, plaintiff's treating physician, reported that plaintiff's primary diagnosis, with an onset date of 2006, was gallstones, with secondary diagnoses of neck pain and depression. (Tr. at 265.) Dr. Li noted plaintiff's reports of pain all over her body, but especially in the neck and radiating to her arms. Dr. Li opined that plaintiff's chronic pain would impose limits on her walking/standing, sitting, lifting, climbing, bending and stooping. (Tr. at 266.) He noted confusion and disorientation in addition to depression. Dr. Li felt that plaintiff might be able to perform sedentary work but that she could not work an eight-hour day five days per week because the gallstones caused too much pain all over her body and her depression impaired her ability to function normally. (Tr. at 266-67.) Dr. Li also noted that plaintiff experiences Vietnam War syndrome. (Tr. at 267.)

Plaintiff contends that the post-2005 evidence, include the evidence described above and various treatment records, served to rebut the presumption of continuing non-disability and that therefore the ALJ in 2008 should not have found the presumption unrebutted and should have continued with the required sequential analysis.

/////

The court agrees. An ALJ is required to consider all evidence in the claimant's record when deciding whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3) & 416.920(a)(3). Here, the ALJ asserted that "the record does not contain any new or material objective evidence which shows any change in the severity of the claimant's impairment" and that "the medical records submitted after the June 21, 2005 [sic], do not contain any new or material objective findings which would rebut the presumption of continuing non-disability." (Tr. at 9.) For reasons that are not clear, the ALJ discounted all of the records from the Sacramento County Mental Health Center of July, August and September 2005 on the basis of notations that plaintiff was contemplating applying for citizenship and was taking medication on an intermittent basis. The ALJ acknowledged that plaintiff "was seen with symptoms related to depression" in 2006 and 2007, but dismissed the records from those years with the statement that the "examinations do not reveal any significant work related findings," again emphasizing plaintiff's report that she was taking medication on a sporadic basis and completing paperwork for citizenship. (Id.)

Remarkably, when even a state agency physician who did not examine plaintiff found plaintiff's depression "severe," the ALJ gave that opinion minimal weight because the physician did not provide what the ALJ perceived as a rationale for the opinion. The ALJ also rejected the 2007 work function assessment of Dr. Koike, plaintiff's treating psychiatrist, for alleged lack of objective evidence reflected in the doctor's treating notes and due to alleged inconsistency with unspecified evidence of plaintiff's daily activities, including caring for her children. (Id.)

The court notes that the post-2005 evidence in the record includes a second consultative report by Dr. Martin, who had examined plaintiff in 2003 and found her musculoskeletal complaints possibly related to osteoarthritis but also found her cooperation poor based on "much grimacing and pain vocalization." When Dr. Martin examined plaintiff again on January 24, 2006, he instead assessed chronic body pain and other impairments, opined that

plaintiff "may have difficulty maintaining employment" and suggested that a mental consultation seemed appropriate. (Tr. at 179.)

The court finds that the ALJ erred when he failed to find that the evidence of major depression, PTSD, and cholelithiasis was sufficient to rebut the presumption of continuing non-disability. The September 4, 2007 psychiatric report by Dr. Koike, plaintiff's treating psychiatrist, demonstrates an increase in the severity of plaintiff's major depression and includes a diagnosis of PTSD, an impairment not previously considered. The August 20, 2007 report by Dr. Li, plaintiff's treating physician, includes a diagnosis of gall stones, an impairment not previously considered and first established by the March 2007 Mercy General Hospital abdominal sonography. Medical evidence in the record does not clearly establish that these impairments, separately or in combination, are slight abnormalities that have no more than a minimal effect on plaintiff's ability to work. Thus, these and possibly other impairments are severe impairments for which adjudication must continue through the sequential evaluation process. In reaching this conclusion, the court is mindful that the step-two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54).

**CONCLUSION**

The court finds that the ALJ erred in finding that plaintiff failed to demonstrate changed circumstances and failed to rebut the presumption of continuing non-disability. The evidence establishes changed circumstances, and the presumption has been rebutted. Remand is required so that the ALJ can proceed with the sequential analysis and fully develop the record. At step two, the ALJ shall include as a severe impairment each of plaintiff's mental and physical impairments that is more than a slight abnormality having no more than a minimal effect on plaintiff's ability to work.

/////

/////

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's June 3, 2009 motion for summary judgment (Doc. No. 20) is granted;

2. Defendant's September 22, 2009 cross-motion for summary judgment (Doc. No. 26) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with this order.

DATED: March 30, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/moua1941.order